724 So.2d 238 (1998)
Lisa Lunt, Wife of David CUPSTID
v.
David CUPSTID.
No. 97-CA-2392
Court of Appeal of Louisiana, Fourth Circuit.
November 10, 1998.
*239 Mary Beoubay Petruccelli, Tracy Ann Petruccelli, Law Offices of Mary Beoubay Petruccelli, Chalmette, Louisiana, Attorneys for Plaintiff/Appellant.
Court composed of Judge ROBERT J. KLEES, Judge ROBERT L. LOBRANO, and Judge MOON LANDRIEU.
LANDRIEU, Judge.
Lisa Lunt Cupstid appeals a trial court judgment and supplemental judgment relating to various child support, visitation, and contempt rulings made subsequent to Ms. Cupstid's divorce from David Cupstid.
Two minor children, Beau and Logan, were born during the Cupstids' marriage. The couple was divorced by judgment of April 2, 1997. On March 14, 1997, the trial judge heard testimony on several rules brought by both parties. The trial judge rendered judgment on these rules on April 28,1997, and supplemented his judgment on May 5, 1997. Ms. Cupstid challenges the rulings made by the trial judge.
The relationship between the Cupstids has obviously been very acrimonious, at least since Ms. Cupstid filed the petition for divorce in June of 1996. Following Ms. Cupstid's first requests for rulings on support, visitation, and related issues, the parties entered into a consent judgment on June 21, 1996. This judgment required both parties to submit to mental health evaluations, required Mr. Cupstid to submit to alcohol and drug screening, set interim support obligations for Mr. Cupstid, set interim custody and visitation, and issued mutual injunctions against the parties related to harassment and alienation of property.
When this consent judgment awarded Ms. Cupstid alimony pendente lite and child support, she was on unpaid maternity leave. Once she returned to work on January 2, 1997, Mr. Cupstid filed a rule to decrease child support. Shortly afterwards, Ms. Cupstid filed a rule for contempt and attorney fees and to make past due child support executory and to increase child support because her return to work necessitated child care expenses. Mr. Cupstid then filed a rule for contempt, joint custody, holiday visitation, and increased visitation. The judgment that Ms. Cupstid appeals was rendered in response to a hearing on these various rules.
The April 28, 1997 judgment held the contempt rules of both parties open and denied both the rule to increase child support and the rule to decrease child support. The judgment terminated alimony pendente lite and granted Mr. Cupstid overnight visitation with his youngest child. Ms. Cupstid appeals, assigning error to:
1. the trial judge's failure to find Mr. Cupstid in arrears and to make his past due support executory;
2. the trial judge's failure to award her attorney fees for having to file a rule to collect her support;
3. the trial judge's failure to find Mr. Cupstid in contempt for failing to pay support, for violating visitation restrictions, and for violating the injunction as to harassment;
4. the trial judge's failure to grant her request to increase child support;
5. the trial judge's grant to Mr. Cupstid of overnight visitation with his eleven-month-old child; and
6. the trial judge's issuance of a supplemental judgment on his own motion, altering the substance of the original judgment.
With regard to her first assignment of error, Ms. Cupstid filed her current rule for past-due support on January 15, 1997, alleging that Mr. Cupstid was in arrears in his alimony pendente lite and child support payments in the amount of $1,067.00. Ms. Cupstid *240 requested an executory judgment for that amount plus interest, attorney fees and costs.
According to the consent judgment signed on July 2, 1996, Mr. Cupstid agreed to pay $522.00 each month for child support and $493.00 each month for alimony pendente lite, for a total of $1015.00 per month. The record shows that by the time the rule was heard on March 14, 1997, although Mr. Cupstid had paid the $1,067.00 that Ms. Cupstid was claiming was past due, two additional months of support were due, February and March of 1997. At the hearing Mr. Cupstid admitted that he had only paid for a portion of his February obligation and none of his obligation for the current month of March.
La.Code Civ. Proc. art. 3946 provides in part:
A. When a payment of support under a judgment is in arrears, the party entitled thereto may proceed by contradictory motion to have the amount of past due support determined and made executory. On the trial of the contradictory motion, the court shall render judgment for the amount of past due support.
Considering Mr. Cupstid's admission that he had paid only a part of his February support obligation and none of his March 1997 obligation, the trial judge should have rendered judgment in Ms. Cupstid's favor, at least for the February portion.[1] Therefore, we remand this matter for the trial judge to determine how much child support and alimony pendente lite is or was in arrears and render judgment in Ms. Cupstid's favor with interest on each past due payment from the date due.
In her second assignment of error, Ms. Cupstid contends the trial judge erred by failing to award attorney fees to her when this was her third rule for past due support. La.Rev.Stat. 9:375 not only provides for an award of attorney fees when a spouse is delinquent in support payments, but it also provides for attorney fees when a spouse has not complied with visitation orders. La.Rev. Stat. 9:375 states:
A. When the court renders judgment in an action to make executory past-due payments under a spousal or child support award ... it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
B. When the court renders judgment in an action to enforce child visitation rights it shall, except for good cause shown, award attorney's fees and costs to the prevailing party.
In the instant case, there is ample support in the record for the trial judge to have awarded Mr. Cupstid attorney fees because of Ms. Cupstid's violation of the visitation schedule. Indeed, in rendering judgment, the trial judge addressed most of his comments to Ms. Cupstid as he sternly warned her to begin to abide by the court-ordered visitation provisions. The record indicates that Ms. Cupstid had prevented visitation between the children and Mr. Cupstid for the six weeks prior to the hearing.
Unlike in Welborne v. Welborne, 29,479 (La.App. 2 Cir. 5/7/97) 694 So.2d 578, writs denied, 97-1800 and 97-1850 (La.10/31/97) 703 So.2d 621 and 623, which Ms. Cupstid cites, Mr. Cupstid was not contending that his compliance with the support order hinged upon Ms. Cupstid's compliance with the visitation orders. Instead, the record indicates that the parties disputed how or where Mr. Cupstid was to make his payments. We find no error in the trial judge's failure to award attorney fees to Ms. Cupstid when, as in this case, the record equally supports such an award to Mr. Cupstid. In sum, "good cause" was shown for the trial court's failure to award attorney fees to Ms. Cupstid by the overwhelming proof of her non-compliance with the visitation orders.
In her third assignment of error, Ms. Cupstid submits that Mr. Cupstid's violations of the support and visitation orders and the *241 injunction enjoining him from harassing her all constitute contempt. While she acknowledges that the trial judge is vested with great discretion in making contempt rulings, Ms. Cupstid argues that Mr. Cupstid's behavior clearly merits a contempt finding.
We disagree. Although the trial judge did not find Mr. Cupstid in contempt, the judge did hold the contempt rules of both parties open. Essentially, either party would be subject to a contempt ruling if either failed to comply with the court's instructions. Particularly noteworthy, we believe, was the trial judge's obvious and greatest displeasure with Ms. Cupstid's failure to comply with visitation orders. We find no abuse of discretion in the trial judge's failure to find Mr. Cupstid in contempt at the hearing, and we believe the trial judge correctly decided to hold both contempt rules open.
Ms. Cupstid's next assignment of error involves the trial judge's failure to increase Mr. Cupstid's monthly child support obligation. At the time that child support was originally set in June 1996, Ms. Cupstid was on unpaid maternity leave from work. Mr. Cupstid's child support obligation was based upon his monthly gross income of $2,000.00. Ms. Cupstid returned to work in January 1997 and began incurring childcare expenses of $60.00 a week for one child and $15.00 a week for the other child. Additionally, the health insurance premium for the two children, which is taken out of her paycheck, is $29.00 per month. Ms. Cupstid asserts that she has proved a change in circumstances sufficient to justify an increase in Mr. Cupstid's child support obligation.
La.Rev.Stat. 9:311 provides in part:
A. An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
La.Rev.Stat. 9:315.8 provides in part:
A. The total child support obligation shall be determined by adding together the basic child support obligation amount, the net child care costs, the cost of health insurance premiums, extraordinary medical expenses, and other extraordinary expenses.
* * *
C. Each party's share of the total child support obligation shall then be determined by multiplying his or her percentage share of combined adjusted gross income times the total child support obligation.
Ms. Cupstid's testimony concerning her childcare expenses and health insurance costs was clear and uncontradicted. Mr. Cupstid's testimony, on the other hand, supporting his request to decrease child support was not so convincing. Admittedly, as a self-employed contractor, Mr. Cupstid's income will fluctuate. His testimony, although clearly showing his lack of knowledge about his financial affairs, did not prove a sustained drop in income sufficient to justify a decrease in his child support obligation. We believe that Ms. Cupstid is entitled to an increase in child support payments from Mr. Cupstid in accordance with La.Rev.Stat. 9:315.8, and that the judge erred in not increasing this obligation whether he was presupposing an offsetting decrease or otherwise. Hence, on remand, the trial judge is ordered to recalculate Mr. Cupstid's child support obligation, adding childcare costs and health insurance premiums to the Cupstids' child support obligation based upon their combined incomes and set forth in a table in La.Rev.Stat. 9:315.14.
Ms. Cupstid's assignment of error complaining of the trial judge's failure to make her rule to increase child support retroactive to the date she filed the rule also has merit. La.Rev.Stat. 9:315.21 provides:
A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand.
* * *
C. Except for good cause shown, a judgment modifying or revoking a final *242 child support judgment shall be retroactive to the date of judicial demand.
As noted in Welborne, 694 So.2d at 584, the burden is not on the claimant spouse to demonstrate good cause; rather, it is on the defendant to show good cause for not making the award retroactive to the date of judicial demand. In this case, Mr. Cupstid presented nothing to show good cause for not making the award retroactive. On remand, once the trial judge increases Mr. Cupstid's child support obligation as set forth above, he is to make the award to Ms. Cupstid retroactive to the date she filed her rule to increase child support.
Ms. Cupstid's next assignment of error is without merit. Here, she claims that the trial judge erred by granting overnight visitation to Mr. Cupstid with his eleven-month-old child. The professional who evaluated the family had recommended that overnight visitation wait until the child was eighteen months old. According to the record, the child is now two and a half years old. The trial judge acted completely within his discretion.
In her last assignment of error, Ms. Cupstid argues that the trial court's supplemental judgment of May 5, 1997, impermissibly altered the substance of the April 27, 1997 judgment. We disagree. The supplemental judgment merely elaborated on exactly how holiday visitation with the children was to be carried out. The only reason for such specificity was that Ms. Cupstid very clearly demonstrated to the court her pettiness and her blatant unwillingness to comply with previous visitation orders. Indeed, the trial judge strongly condemned her earlier use of a typographical error in a judgment to disregard commencement of the children's visitation with their father.
Accordingly, although the judgments on appeal are affirmed in part, the matter is remanded for the trial court to determine the amounts of child support and alimony pendente lite in arrears and to issue an executory judgment for the amount due to Ms. Cupstid. The April 28, 1997 judgment is reversed insofar as the trial judge denied Ms. Cupstid's rule to increase child support. On remand, the trial court is ordered to add monthly childcare and health insurance expenses to the Cupstids' monthly joint child support obligation, to determine Mr. Cupstid's increased monthly child support obligation, and to issue a judgment making the increase retroactive to the date Ms. Cupstid filed her rule to increase child support.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] Contrary to Ms. Cupstid's assertion, because the original consent judgment was silent as to when payments were to be made, we believe it would not have been appropriate for the trial judge to find Mr. Cupstid in arrears for the March 1997 obligation when the hearing was held on March 14 of that month.